May it please the Court, I'm Michael Wyndham on behalf of Pinnacle Armor. This appeal is about Pinnacle's right to an opportunity to present its side of the story in the District Court. That right was denied by an incorrect application of APA Section 701A2 and a too narrow application of the test for due process property interest. I'd like to first turn to the APA issue. The Supreme Court has said that there is a strong presumption in favor of judicial review under the APA and that under 701A2 there should be no review only when there is no law to apply, which is to say that there's no meaningful standard for the Court to utilize in effecting that review. The exception is an extremely narrow one. Here there was a meaningful standard and, in fact, the government in its response brief has provided a very serviceable standard for the Court to utilize, whether based on the scientific evidence the body armor would maintain its performance throughout its warranty period. The relevant statute gave the NIJ the authority to make this determination based on technical standards that it established through its Office of Science and Technology. And Pinnacle alleges that the NIJ did just that. It made a technical determination based upon technical standards that are incorporated in the 2005 interim requirements. Well, that's where I'm having my problem, Counsel. I'm looking at ER202, which is the second page of the 2005 requirements that you're referring to. And it is replete with the sufficiency of which shall be determined by NIJ, the sufficiency of which shall be determined by NIJ. If that is the standard that we are to apply, then what do we look to to declare that NIJ's decision was arbitrary and capricious when they say it's not satisfactory to us? Well, I'd like to make a few points about that. Sure. First of all, as I tried to convey in the brief, arguably that language is a tautology. You know, it's the NIJ that makes the determination. So to say that the determination is made to the NIJ's satisfaction is really to say what frankly seems fairly obvious. If the 2005 interim requirements did not contain technical standards, it seems to me that that argument would be a stronger one. Because then it would be an utterly discretionary choice for the NIJ to make without regard to technical requirements and without regard to technical data. But that's just not the case. The 2005 interim requirements, which incorporate the 2004 standard, is a pretty obtuse document. And it contains a whole slew of complicated technical standards. Counsel, I have seen, I have looked at the 2005 standard requirements that were found at ER, starting on ER 201. Yes, sir. I've also looked at the ballistic resistance of body armor, NIJ standard, that's just the 2008 standard. Now, the copy that I have of that has got some very, very detailed specifications in it. Are those specifications, I'm just looking at the table of contents, are those, did the 2005 standards have a similar set of standards that just were not provided in the ER? This is what I think is the correct answer. The 2005 interim requirements do contain technical standards that are comparable to the technical standards in the 2006 new standard. I'm not enough of an expert in all candor to tell you that they are identical. But the 2005 interim requirements do incorporate, by reference, the NIJ standard 0101.04, which was attachment 5, exhibit D, to the verified complaint, which I believe you'll find in the excerpts of record beginning at page 140. Okay. So the 0101.4 is, was incorporated in the 2005 standard? Yes, sir. Because the 0101.06 is the one that replaces 0101.4. And the 05 interim requirements were promulgated by the NIJ after the 0101.04 standard to deal with a very specific issue that the NIJ wanted to address, but didn't, in that case, did not, quote, unquote, supersede anything. It augmented. And so our, sorry. Well, no, I mean, I'm still struggling with, I see the cross-reference at ER 202 to the NIJ 0101.04 standard, but I'm still struggling with the, The language? The language that says that it has to be sufficient in their determination. Well, and I don't think there's any question that the showing has to satisfy the NIJ. But it doesn't have to satisfy the NIJ bereft of technical standards. The NIJ is applying very complex, very detailed, admittedly, technical standards to a body of scientific evidence and making a determination. What the government has done in this case is conflate making a judgment with exercising abject discretion. And those are not the same thing. Those are not the same thing. There's simply no reason why the NIJ's technical determination is not amenable to the sort of judicial review that takes place under the Administrative Procedure Act. There are other cases where technical judgments by administrative agencies are reviewed by the federal courts. Well, I guess one area that comes to mind would be environmental law, where we're dealing with very technical, scientific. And if I could speak to that briefly, because, you know, both sides in this case talk about the County of Esmeralda case. And we frankly think, we meaning I frankly think, it's a pretty useful case. The fact of the matter is, in that case, the agency was dealing under the Nuclear Waste Policy Act with very complex technical issues. Groundwater contamination, risk of radioactive releases. That case, for goodness sakes, the statute stated no factors for the agency to consider, and indeed actually said that the determination was to be made at the discretion of the Secretary, and yet this Court concluded that the matter was reviewable because there was a meaningful standard. And the meaningful standard that this Court articulated was, did the agency meaningfully consider the possibility and extent of suggested impacts and make a reasoned decision? And the Court also said, and this is a test that I think may derive from that case, but I think is repeated elsewhere, that judicial review would not endanger the purpose of the statute. Our view here is that that is a very useful roadmap for analyzing whether there should be judicial review in this case. The District Court can determine whether the NIJ made a reasoned determination based on its own published technical criteria about whether dragon skin body armor would perform during its full warranty period. What's, what's, what do we do with the fact, though, that your client declined to produce information that would have aided in that evaluation? Well, I, I, I think the short answer is Pinnacle became fed up at what it perceived to be. Well, I understand why they didn't. I, I, believe me, I understand they were frustrated beyond description, but the fact is that they didn't give the agency the technical data that the agency needed in order to do what you say the District Court should now do, which is to review the propriety of the agency's decision. Well, I, with all respect, I, I suppose I would characterize my argument a, a little bit more benignly. If, if, if... I'd be disappointed if you didn't. Well, thank you. And I would hate to disappoint you. I don't get to do this very often. If, if the NIJ in fact acted as Pinnacle alleges in a capricious way, in an ad hoc manner, ignoring relevant evidence and changing its expectations and its requirements on the fly, then it does seem to me that at some point Pinnacle or, or any party is, is entitled to say, we've done the best we can. We've done all we can. And, and, and to, to in effect say that, that that process has to continue forever when the, when the allegation is that the conduct was a violation of due process seems to me to, to be unfair to, to the Pinnacles of the world. The only other point that, that I would want to make, going back to your original question and premise about the language in, in the 05 Interim Requirement, there is the Supreme Court's recent decision in the Kusana case. And I understand, which frankly I only figured out was out there like yesterday. So I don't want to over-represent my, my genius and expertise on this. But my understanding of that decision is, and, and I understand it's not on point, it's not a 701A2 case. But, but in dealing with a jurisdiction stripping provision of the Immigration Act, the Supreme Court was, was not impressed by the idea that an administrative agency can in effect confer abject discretion upon itself and immunize its decisions from judicial review. When I, when I became aware of that decision, I re-read the government's brief. The government invokes the language of the Interim Requirement, the language that you mentioned, on the due process side in its brief, not on the APA side. I don't know why they, they made that choice. It's, it's frankly a different tack, at least it's my impression, than was taken earlier. It may be that, that the tack is informed by this case. Frankly, my view is if it was, it was a well-considered adjustment. Because I, I think there are real questions about whether this Court should conclude that there's no judicial review under 701A2 because of the language that you mentioned under the Interim Requirements. I think that is a, has become a very, very difficult proposition. I'm going to reserve the time. Well, actually you're a minute and 40 seconds over. I am. I'll give you a minute or two in rebuttal. Let's hear from the government. Thanks a lot. You bet. May it please the Court, Henry Whitaker on behalf of the government. Just at the outset to dispel Mr. Weinbaum's speculation, we certainly are relying on that language, not only with respect to the due process issue, but also with respect to the reviewability issue. And I think that it should, that it does indicate that the 2005 Interim Standards fairly exude discretion to the agency in making that determination. And, you know. Do the 2005 Standards incorporate the 2004, the 0101.04 Standards? Yes. Yes, they do, Your Honor. And do those standards contain the kind of detail that's found in 0101.06? That's the 2008. On a different, on a different issue, Your Honor, they do. Okay. But if so, I mean, you've got pages and pages and pages describing how you're to conduct the ballistics tests and, you know, what the, what the testing protocols are to be. That's, that's the kind of detailed stuff that we review all the time under AP review. How do you, how do you get this under 701A2? Well, Your Honor, those detailed requirements are not at issue in this appeal. What is at issue in this appeal are the, the standard that was added by the 2005 Interim Requirements. And that namely was that the manufacturer has to give NIJ some assurance, not only that the armor will perform as advertised out of the box, but also that it will maintain its performance over the entire life of the warranty. And the 2004 Standards did not address that at all. Those detailed technical requirements did not address the continued performance. And the, the language that we've been discussing, this, that, that manufacturer must possess data that demonstrates to NIJ's satisfaction relates to the information that the manufacturer must have that demonstrates the continued performance. And that is what is at issue in this case. And so, it's, it's an, I mean, the problem is, is that you are now asking us to say that if, if, if an agency says you have to satisfy us. I mean, this is like saying the, the, to, to the court. The court can say you, you must satisfy us today in order for your client to win. Well, that doesn't mean that we can go back in the back conference room and start flipping coins. But there, you must satisfy us according to the standards which we have established. And there must be some kind of scientific validity to what the agency has to do. It may be that with the, with the exercise of discretion, that, that the agency has conferred on itself by its own interim regulations, that you have granted yourself a good deal of leeway. But it doesn't mean that NIJ could decide whether Pinnacle has satisfied that by flipping a coin. Well, Your Honor, I think actually the, the type of discretionary language that, that is in the 2005 Interim Requirements is exactly the type of language that the Supreme Court has said. It does exude def, the type of deference that does make something unreasonable. What, what's your best Supreme Court case of that kind of deference for 701A2? Well, let's take Webster v. Doe, Your Honor. And, and I have Webster v. Doe right here. And, you know, and the language at issue in Webster was that the CIA, the, the, whether the CIA director could fire someone. And the language was that you can fire someone when, when the CIA shall deem such termina, termination necessary or advisable in the interest of the United States. And then it went on. So, so the, so the, the, the question is not simply when the dismissal is necessary or advisable to those interested. So that, that is exactly the type of distinction. Yeah. But the, but the question of what is in the interest of the national secure, national interest of the United States as determined by the director of the CIA is the kind of thing that courts have no expertise whatsoever in, in doing. You're talking about exercising warranty. You're talking about, you're talking about testing protocols that will tell you whether, whether the body armor is going to, is going to hold up under intense heat over the course of the five or six or seven year, whatever the warranty is. That, that's, those are the kinds of questions that get litigated all the time. Well, let me just say, as an initial matter, so I, I do think that shows that the type of pathology Mr. Weinbaum posited is, is not, is not really an issue. But to answer your, your question about, I, I think that this is the type of, of technical to, it's one thing in, in. So, so Webster, Webster is the best case that the government's got? I think so, Your Honor. Webster is discussed, by the way, at County of Esmeralda in, in, and I think also I, I'd advise Your Honor to look at FAA v. Adams too, which the district court relied on. And that, that, again, makes, I think, the kind of distinction, distinguishing County of Esmeralda makes the kind of distinction that, that I'm talking about today. But, but just to go back to your question about whether this is the type of determination, it's one thing in the, in the environmental context. Congress has certainly provided various standards that the courts are to apply, whether various technologies are attainable and the like. Here, the only, the only, the statute, all the statute says, and the statute that Mr. Weinbaum has relied on says that NIJ shall establish a testing program. It doesn't say anything about how. If this had been decided under, if the, if the NIJ had been able to decide this only by recourse to 0101.04, without reference to the, the 2005 interim guidelines, would that be a different case? I don't think it would be a different case. And I'll tell you why, Your Honor, is that, yes, it is true that those ballistic standards are extremely detailed. But it is not true that they are intended to be an all-purpose test for armor. And, and Pinnacle is a case in point. It, in order to certify Pinnacle as compliant with those standards, we, we had to do something really extraordinary. We had to work with, with Pinnacle, this dragon skin armor that Pinnacle has is a unique type of armor. And, you know, various armors that have, that have, depending on their materials, can present different kinds of engineering challenges. So we had to come up with an entirely distinct protocol. But, but that suggests that the agency hasn't behaved in an arbitrary and capricious fashion. You're asking us to declare that the agency is beyond any review whatsoever. Those are two very different propositions. Well, Your Honor, I, I suppose what I was trying to address was whether the, as you mentioned, the detailed nature of those standards and, and the detailed nature of the O6 standards. And yes, they are detailed. What I'm saying to you is that they're not intended to be an entire universe of this is the standard that we have to apply no matter what. Because it, it may not be appropriate to apply those standards depending on the technology at issue. And, and so, and that's why when we, we just can't, you can't mechanically say, here's the O4 standard. If they, if they satisfy it, then they're fine. But the fact that the agency has some flexibility in its ability to make its, its judgment again may go to the question of whether it's arbitrary and capricious. But what case do you have that suggests that they've put it beyond judicial review? Well, well, once again, Your Honor, I mean, we, of course, the APA does give us the, the ability under, under 706-2A to review abuses of discretion. Well, well, I think, Your Honor, because if you look at the statute that grants the statute, it does specify there, I mean, and even when you look at the O4 standard, there's, it does specify various standards, but nowhere does it purport to say that these considerations are mandatory and cannot be changed in altering the life. Well, the fact that there's no, that there's no standard found in the, in the statute, of course, suggests that we've got, we may have a delegation problem, but I don't think you want to make that argument. No, certainly. There's no delegation problem, Your Honor, here. But, I mean, again, even if, if it were true that the O4 standard, you know, provided some way to review it, that's not what's at issue here. What's at issue is whether the plaintiffs have satisfied the conditioning that had provided adequate conditioning data consistent with the O5 standard. And I think the language that Judge Tallman cited in, in the, in the opening argument certainly suggests that that kind of determination is unreviewable. Let me see if I can recharacterize what I thought I heard you say. There, there isn't any challenge here that Pinnacle's armor, when it was initially certified, met the standards as they existed at that time. The concern that the government had later, as a result of the Army's reports, was durability. How does this thing hold up over time? And that was the focus of the change in 2005. And it's the data on durability that Pinnacle failed to produce all the technical data on. Exactly, Your Honor. That's exactly what I'm trying to say. Okay. You said it much better than I did. But, and, and just to go back to a point, Mr. Warren, Pinnacle has not been denied any opportunity to be heard here. Pinnacle had ample opportunity to make its case both to the agency and to the district court. And all this stuff about they were deprived an opportunity to have discovery. Pinnacle never served any discovery on us. Pinnacle never contended in the district court that the record was in any way deficient. And, and was, was, that you couldn't decide these things on present record. All that stuff was, all those arguments were made for the first time in Pinnacle's reply. And I would submit that those documents indicate that, that the agency acted, gave Pinnacle ample opportunity to submit data, carefully considered the data that Pinnacle did submit. And explained to Pinnacle, in detail, why its submissions were insufficient. And it is proper. That would mean that the agency didn't, didn't behave in an arbitrary and capricious fashion, would it? It, it, it would mean that, Your Honor. I certainly think that, and the district court concluded that the agency did not act arbitrary and capricious. But how can you reach that judgment on a 12 v 6? That's not the basis for the district court's decision. It, it, it is, it is certainly the basis for the district court's decision, Your Honor, to reach the arbitrary and capricious issue. But you can reach that on a motion to dismiss, Your Honor, because the relevant documents were attached to Pinnacle's complaint. Evidence that, that Pinnacle submitted, NIJ's letters, those were attached to Pinnacle's complaint. And under Federal Rule of Procedure 10C, that can be considered on a motion to dismiss. So, you, Pinnacle did not state an arbitrary and capricious claim, not only for the reviewability reason, not only because there's no property interest in the beginning of the due process clause, but also because the, the, those documents show that the agency did not act arbitrarily and capriciously here. So, you can affirm on that basis, Your Honors. I'd be happy to answer any further questions about mootness or anything else, but. Any further? We would ask that the judgment of the district court be affirmed. Very well. Thank you. Mr. Weinbaum, I'll give you a minute. You know what? I'm happy to see the time that I don't have. Oh, all right. Very well. Well, then, thank you both very much. The case just argued is submitted.
judges: Burgess, Tallman, Bybee